

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Northern Division*

---

| | | | |
|---|---|---|---|
| *Matthew J. Maddox*<br>*Assistant United States Attorney*<br>*matthew.maddox2@usdoj.gov* | *Mailing Address:*<br>*36 S. Charles Street, 4th Floor*<br>*Baltimore, MD 21201* | *Office Location:*<br>*36 S. Charles Street, 4th Floor*<br>*Baltimore, MD 21201* | *DIRECT: 410-209-4940*<br>*MAIN: 410-209-4800*<br>*FAX: 410-962-0716* |

August 23, 2021

VIA EMAIL

Glenn Ivey, Esquire
ivey@iveylevetown.com

    Re:    <u>United States v. Johnson B. Ogunlana</u>, Crim. No. CCB-20-0285

Dear Counsel:

       This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Johnson B. Ogunlana (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by **August 23, 2021, at 9:30 a.m.**, it will be deemed withdrawn. The terms of the Agreement are as follows:

Offense(s) of Conviction

       1.    The Defendant agrees to plead guilty to Counts One, Twelve, Twenty-Three, and Thirty-Two of the Second Superseding Indictment, which charge the Defendant with Conspiracy to Commit Bank Fraud and Mail Fraud, in violation of 18 U.S.C. § 1349; Access Device Fraud, in violation of 18 U.S.C. § 1029(a)(5); Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A; and Theft of Mail by a Postal Employee, in violation of 18 U.S.C. § 1709; respectively. The Defendant admits that the Defendant is, in fact, guilty of the offenses and will so advise the Court.

Elements of the Offense(s)

       2.    The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows: That on or about the time alleged in the Criminal Information, in the District of Maryland,

      *Count One (Conspiracy to Commit Bank Fraud and Mail Fraud)*

          a.  Two or more persons agreed to try to accomplish a common and unlawful plan to commit a fraud crime listed in Title 18 Chapter 63, as charged in the Second

Superseding Indictment (*e.g.*, Bank Fraud, in violation of 18 U.S.C. § 1344, or Mail Fraud, in violation of 18 U.S.C. § 1341); and

b. the Defendant knew the unlawful purpose of the plan and willfully joined it.

*Count Twelve (Access Device Fraud)*

c. With access devices issued to other persons, the Defendant knowingly effected transactions;

d. the Defendant obtained through such transactions, at any time during any one-year period of time, a total of at least $1,000 in payments or things of value;

e. the Defendant acted with intent to defraud; and

f. the Defendant's conduct in some way affected commerce between one state and other states.

*Count Twenty-Three (Aggravated Identity Theft)*

g. The Defendant knowingly transferred, possessed, or used the means of identification of another person,

h. knowing that the person was a real person,

i. without lawful authority,

j. during and in relation to a felony enumerated in 18 U.S.C. § 1028A(c), to include the violations of 18 U.S.C. §§ 1344 and 1349.

*Count Thirty-Two (Theft of Mail by a Postal Employee)*

k. The Defendant was a United States Postal Service employee;

l. an item of U.S. mail, or an article or thing contained within mail item, was entrusted to the Defendant and came into the Defendant's possession for the purpose of being conveyed by mail, carried or delivered by a person employed in the U.S. Postal Service, and forwarded through or delivered from a post office or postal station established by authority of the Postmaster General or of the U.S. Postal Service;

m. the Defendant embezzled or stole the mail item, or article or thing contained within the mail item.

Rev. August 2018

Penalties

3.      The maximum penalties provided by statute for the offenses to which the Defendant is pleading guilty are as follows:

| Count | Statute | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|
| 1 | 18 U.S.C. § 1349 | 30 years | 5 years | $1,000,000 | $100 |
| 12 | 18 U.S.C. § 1029(a)(5) | 15 years | 3 years | $250,000 | $100 |
| 23 | 18 U.S.C. § 1028A | 2 years mandatory, consecutive | 1 year | $250,000 | $100 |
| 32 | 18 U.S.C. § 1709 | 5 years | 3 years | $250,000 | $100 |

a.      Prison:  If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

b.      Supervised Release:  If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

c.      Restitution:  The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

d.      Payment:  If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d).  The Defendant may be required to pay interest if the fine is not paid when due.

e.      Forfeiture:  The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

f.      Collection of Debts:  If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt.  If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law.  Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control.  Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns.  The Defendant

Rev. August 2018

3

agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

## Waiver of Rights

4.     The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

a.     If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b.     If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.     If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

d.     The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

e.     If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f.     By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

Rev. August 2018

4

g.      If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

h.      By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

5.      The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551 through 3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6.      This Office and the Defendant stipulate and agree to the Stipulation of Facts set forth in Attachment A, which is incorporated by reference herein.

### *Counts One, Twelve, and Thirty-Two, and Relevant Conduct*

a.      This Office and the Defendant further agree that the applicable base offense level is **7** pursuant to United States Sentencing Guidelines ("U.S.S.G.") §§ 2X1.1(a) and 2B1.1(a)(1).

b.      The parties further agree that there is an increase pursuant to U.S.S.G. § 2B1.1(b)(1) for actual and intended losses. The Defendant contends that the loss exceeded $550,000 but did not exceed $1,500,000, resulting in an increase of **14 levels** pursuant to § 2B1.1(b)(1)(H). This Office contends that the loss exceeded $1,500,000 but did not exceed $3,500,000, resulting in an increase of **16 levels** pursuant to § 2B1.1(b)(1)(I). The parties further agree that this dispute will be resolved by the Court at sentencing. (Subtotal: 21 or 23)

c.      The parties further agree that there is an increase of **2 levels**, pursuant to U.S.S.G. § 2B1.1(b)(2)(A), because the offense involved 10 or more victims. (Subtotal: 23 or 25)

d.      The parties further agree that there is an increase of **2 levels**, pursuant to U.S.S.G. § 2B1.1(b)(10), because the offense involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means. (Subtotal: 25 or 27)

e.      The parties further agree that there is an increase of **2 levels**, pursuant to U.S.S.G. § 2B1.1(b)(11), because the offense involved the production of or trafficking of any unauthorized access device or counterfeit access device, or the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification. (Subtotal: 27 or 29)

f.      The parties further agree that there is an increase of **2 levels**, pursuant to U.S.S.G. § 3B1.3, because the Defendant abused a position of public trust. (Subtotal: 29 or 31)

g.      This Office does not oppose a **2**-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

h.      Thus, the parties anticipate a final offense level of **27 or 29** for Counts One, Twelve, and Thirty-Two.

*Count Twenty-Three (Aggravated Identity Theft)*

i.      Pursuant to USSG §2B1.6, the guideline sentence for Count Twenty-Three is two years, to be imposed to run consecutively to any term of imprisonment imposed for Counts One, Twelve, and Thirty-Two.

7.      There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

Rev. August 2018

6

8.      Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

## Obligations of the Parties

9.      At the time of sentencing, this Office and the Defendant reserve the right to advocate for a reasonable sentence, period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a). This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Superseding Indictment. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

## Waiver of Appeal

10.      In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

a.      The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

b.      The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

c.      The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Restitution

11.      The Defendant agrees to the entry of a restitution order for the full amount of the victims' losses. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. The total amount of restitution shall be due immediately and shall be ordered to be paid forthwith. Any payment schedule imposed by the Court establishes only a minimum obligation. Defendant will make a good faith effort to

Rev. August 2018

7

pay any restitution. Regardless of Defendant's compliance, any payment schedule does not limit the United States' ability to collect additional amounts from Defendant through all available collection remedies at any time. The Defendant further agrees that the Defendant will fully disclose to this Office, the probation officer, and to the Court, subject to the penalty of perjury, all information (including but not limited to copies of all relevant bank and financial records) regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this Agreement, and this Office may seek to be relieved of its obligations under this Agreement.

Forfeiture

12.     The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense(s), substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

13.     Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in anything that constitutes money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities, including a money judgment in the amount of actual losses, and the sum of cash totaling $521 obtained from a wallet owned and lost by the Defendant and received by law enforcement between December 24, 2018, and January 14, 2019.

14.     The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

15.     The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

16.     The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

Rev. August 2018

8

## Defendant's Conduct Prior to Sentencing and Breach

17.     Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

18.     If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

## Court Not a Party

19.     The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

20.     This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office

other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Jonathan F. Lenzner
Acting United States Attorney

Matthew J. Maddox
Assistant United States Attorney

Michael F. Davio
Special Assistant United States Attorney

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

08/23/2021
Date

Johnson B. Ogunlana

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

8/23/2021
Date

Glenn Ivey, Esq.

Rev. August 2018

10

## ATTACHMENT A

## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

The defendant Johnson B. Ogunlana (the "Defendant"), age 25, is a resident of Maryland. *CcB*

Between July 25, 2016, and February 5, 2019, in the District of Maryland, and elsewhere, the Defendant knowingly and willfully conspired and agreed with others to commit theft and fraud offenses—including Bank Fraud, in violation of 18 U.S.C. § 1344, and Mail Fraud, in violation of 18 U.S.C. § 1341—by executing schemes to defraud financial institutions, retail establishments, and other business victims, and causing matters to be delivered by mail and by private and interstate carrier, and stealing matters from the mail, for the purpose of executing the fraud schemes.

During the time period of the conspiracy, the Defendant was employed as a letter carrier with the United States Postal Service and stole numerous items of United States mail that were entrusted to him for delivery or to which he had access, including business checks, credit cards, and related correspondence. The Defendant requested from co-conspirator Samson Oguntuyi ("Oguntuyi") sensitive personal identifying information ("PII") belonging to numerous individual victims, including dates of birth and Social Security numbers. These victims were typically postal customers who lived on the postal delivery route to which the Defendant was assigned or at other addresses whose mail was serviced out of the USPS facility where the Defendant worked. Oguntuyi supplied the requested information, which the Defendant and Oguntuyi used to activate credit cards stolen by the Defendant. Additionally, the Defendant offered up lists of addresses on his assigned postal routes and bank accounts in the names of others to co-conspirators for use in furtherance of fraud.

Between May 1, 2018, and December 24, 2018, the Defendant caused fraudulent retail transactions using particular credit cards issued to other persons totaling more than $10,000. Specifically, the Defendant intercepted, embezzled, and stole these credit cards from the mail. The credit cards included a credit card with a number ending in 9295 issued by Synchrony Bank to S.S., a credit card with a number ending in 7302 issued by Citibank to V.M., a credit card with a number ending in 8151 issued by Chase Bank to K.Y., and a credit card with a number ending in 2195 issued by Citibank to B.I.S. and E.S. The Defendant also caused numerous other stolen credit cards to be used to conduct fraudulent retail transactions, including consumer electronics that the Defendant would attempt to sell for a profit. The fraudulent transactions in stolen credit cards affected interstate commerce, including by affecting interstate correspondence between the issuing institutions and the victim cardholders and the interstate shipment of merchandise.

During the investigation, law enforcement recovered from a cell phone seized from the Defendant lengthy correspondence through the mobile messaging application WhatsApp.

Rev. August 2018

Through WhatsApp, the Defendant would send photos of the stolen mail pieces and credit cards to Oguntuyi and others. Once the stolen credit cards were activated, members of the conspiracy used the credit cards to make retail purchases. The WhatsApp correspondence included photos of numerous credit cards issued in dozens of individual victims' names and discussions about credit limits.

Additionally, during the time period of the conspiracy, the Defendant sought out and stole checks addressed to particular businesses whose mail was serviced out of the USPS facility where the Defendant worked—specifically, Devere Insulation Company and Evan Transportation Inc. The Defendant and Oguntuyi then caused the checks to be negotiated by deposit into various bank accounts.

Between August 2018 and January 2019, the Defendant and Oguntuyi caused fraudulent business bank accounts to be opened in names the same as or similar to the business victims in order to negotiate the stolen checks through fraudulent deposits. In order to open the fraudulent business bank accounts, members of the conspiracy formed and registered several business entities with state agencies in Maryland, Georgia, Tennessee, and other states, and used the PII of individual victims to obtain employer identification numbers ("EINs") for the entities from the Internal Revenue Service. Members of the conspiracy then produced fraudulently obtained EINs and state filings to verify the existence of the fraudulent business entities when applying for business bank accounts. The Defendant and Oguntuyi caused the PII of individual victims to be used in order to list these victims as owners of the business account holders and signers on the accounts. In truth and fact, the individual victims had no affiliation with either Devere Insulation Company or Evan Transportation Inc. and did not authorize their identities to be used to register EINs or open bank accounts.

Once the fraudulent business bank accounts were established, the Defendant and other members of the conspiracy personally deposited stolen business checks into the accounts. The amount of checks stolen from DeVere Insulation Co. and Evan Transportation Inc. in furtherance of the conspiracy totaled approximately $565,000. These losses were reasonably foreseeable to the Defendant.

The Defendant was captured on bank surveillance making the following fraudulent deposits into a business bank account ending in x4220 at Wells Fargo:

| Date | Payee(s) | Amount | Account | Branch |
|---|---|---|---|---|
| 10/31/18 | DeVere Insulation Co. | $5,973.60 | x4220 | Parkside |
| 11/3/18 | DeVere Insulation Co. | $24,210.43 | x4220 | Parkside |

Each of the foregoing deposits consisted of checks made payable to the listed business victim and stolen from the mail. Most of the checks bore the forged signature of J.C., a resident of Georgia whose identity was exploited and fraudulently listed as a signer on account. In truth and in fact, J.C. had no affiliation with DeVere Insulation Company and did not authorize the Defendant and his co-conspirators to endorse his name on checks. The Defendant and his co-conspirators

Rev. August 2018

similarly exploited the identity of T.B., a postal customer who lived on Ogunlana's assigned delivery route.

After stolen checks were deposited into the fraudulent bank accounts, members of the conspiracy would withdraw and attempt to withdraw funds from the accounts through transfers to other accounts, cash withdrawals, checks, and cash-back transactions at retail establishments.

The Defendant's personal vehicle was searched pursuant to a search warrant on February 5, 2019. During the search law enforcement recovered several ripped checks addressed and made payable to Devere Insulation Company totaling more than $24,000, and a ripped check addressed and made payable to Evan Transportation Inc. in the amount of $1,700, all of which the Defendant had stolen from the mail. The check made payable to Evan Transportation Inc. was addressed to a location on the Defendant's postal delivery route. Law enforcement also recovered correspondence regarding a credit card addressed to E.B. (with the credit card missing), the aforementioned cell phone containing WhatsApp correspondence, and bank statements and other mail items issued and addressed to other persons.

SO STIPULATED:

Matthew J. Maddox
Assistant United States Attorney

Michael F. Davio
Special Assistant United States Attorney

Johnson    B.    Ogunlana
Defendant

Glenn Ivey
Counsel for Defendant